## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
### (BID PROTEST)

| | |
|---|---|
| SIERRA NEVADA CORPORATION, ) | Civil Action No. 14-994C |
| ) | |
| Plaintiff, ) | **Judge Marian Blank Horn** |
| v. ) | |
| ) | |
| THE UNITED STATES, ) | ███████████████ |
| ) | |
| Defendant ) | |
| ) | Final Redacted Version |
| and ) | |
| ) | |
| SPACE EXPLORATION ) | |
| TECHNOLOGIES CORPORATION, ) | |
| ) | |
| Defendant-Intervenor, ) | |
| ) | |
| and ) | |
| ) | |
| THE BOEING COMPANY, ) | |
| ) | |
| Defendant-Intervenor. ) | |

---

## SPACE EXPLORATION TECHNOLOGIES CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION FOR DECLARATORY JUDGMENT AND APPLICATION FOR A TEMPORARY RESTRAINING ORDER

Richard J. Vacura
Morrison & Foerster LLP
Attorney of Record for
Space Exploration Technologies Corporation

Of Counsel:
Pablo A. Nichols
Steven W. Cave
Catherine L. Chapple
Morrison & Foerster LLP


Dated:  October 20, 2014

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 5

II.     SPACEX'S CERTIFIED BASELINE REVIEW ACTIVITIES AND THE
        IMPACT OF THE STAY ON SPACEX'S TIMELY PERFORMANCE......................... 6

III.    THE RUSSIAN SOYUZ IS NOT A VIABLE ALTERNATIVE, AND
        CONTINUING TO RELY ON THE SOYUZ WOULD RESULT IN
        NUMEROUS MATERIAL ADVERSE CONSEQUENCES FOR NASA...................... 8

IV.     PLAINTIFF CONCEDES THAT ITS CLAIM IS BASED ON A MERE
        DISAGREEMENT WITH NASA'S CONCLUSIONS IN THE D&F .......................... 11

V.      PLAINTIFF IGNORES THE COST OF ADDITIONAL PURCHASES FROM
        THE RUSSIANS ............................................................................................ 13

VI.     THE FOUR REILLY'S WHOLESALE FACTORS ARE NOT A BINDING
        TEST, BUT RATHER ARE A HELPFUL FRAMEWORK FOR ASSESSING
        WHETHER NASA'S D&F WERE ARBITRARY AND CAPRICIOUS ..................... 14

VII.    PLAINTIFF HAS ASKED THIS COURT FOR INJUNCTIVE RELIEF AND A
        TEMPORARY RESTRAINING ORDER; IT CANNOT CIRCUMVENT THE
        APPLICABLE FOUR-FACTOR TEST FOR SUCH EXTRAORDINARY
        RELIEF ........................................................................................................ 15

        A.      Plaintiff Requests a Temporary Restraining Order and Injunctive Relief .......... 16

        B.      Declaratory Judgment, Standing Alone, Is Insufficient Relief to Reinstate
                the CICA Stay ..................................................................................... 17

VIII.   CONCLUSION............................................................................................... 19

## TABLE OF AUTHORITIES

CASES                                                                          Page(s)

**U.S. SUPREME COURT**

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
    401 U.S. 402 (1971)........................................................................11

*Powell v. McCormack,*
    395 U.S. 486 (1969)........................................................................18

**U.S. COURTS OF APPEALS**

*Ramcor Servs. Grp., Inc. v. United States,*
    185 F.3d 1286 (Fed. Cir. 1999)........................................................12

*Ulstein Maritime Ltd. v. United States,*
    833 F.2d 1052 (1st Cir. 1982)......................................................17, 19

**U.S. COURT OF FEDERAL CLAIMS**

*Advanced Sys. Dev., Inc. v. United States,*
    72 Fed. Cl. 25 (2006)......................................................................15

*Automation Techs., Inc. v. United States,*
    72 Fed. Cl. 723 (2006)................................................................12, 15

*Beechcraft Def. Co., LLC v. United States,*
    111 Fed. Cl. 24 (2013)....................................................................15

*Dyncorp International LLC v. United States,*
    113 Fed. Cl. 298 (2013)..............................................................12, 15

*E-Mgmt. Consultants, Inc. v. United States,*
    84 Fed. Cl. 1 (2008)........................................................................14

*Planetspace Inc. v. United States,*
    86 Fed. Cl. 566 (2009)................................................................14-15

*Reilly's Wholesale Produce v. United States,*
    73 Fed. Cl. 705 (2006)................................................................14-19

**STATUTES**

28 U.S.C. § 2201............................................................................17

28 U.S.C. § 2202..................................................................................................................18

51 U.S.C § 50131(a) ...........................................................................................................8

NASA Reauthorization Act of 2010, Pub. L. 11-267 § 501(a)..........................................8

**OTHER AUTHORITIES**

Daniel I. Gordon, *Bid Protests: The Costs are Real, But the Benefits Outweigh Them*, 42:3 Pub. Contract L.J. (Spring 2013)………………………………………………………………………...13

Space Exploration Technologies Corporation  ("SpaceX") respectfully submits this Opposition to Plaintiff's Motion for Declaratory Judgment and Application for a Temporary Restraining Order ("TRO") (together, Plaintiff's "Motion").  Plaintiff's Motion challenges the NASA's October 9, 2014 Determination & Findings ("D&F") in which NASA determined that continued performance of the Commercial Crew Transportation Capability ("CCtCap") contracts during Plaintiff's pending GAO bid protest was both in the best interests of the United States and justified by urgent and compelling circumstances.

## I.    INTRODUCTION

Plaintiff's challenge to NASA's D&F largely boils down to a disagreement regarding the viability of NASA's continued reliance on Russia, in 2018 and beyond, to transport astronauts to the International Space Station ("ISS").  Plaintiff concedes that the delay caused by its GAO bid protest and resulting CICA stay likely will result in NASA not receiving a certified launch vehicle from a CCtCap awardee in 2017.  Plaintiff submits, however, that a delay will not have adverse consequences on the United States because NASA has the alternative of purchasing seats on the Russian Soyuz launch vehicle for 2018.

As NASA explained in its D&F, continued reliance on Russia beyond 2017 is not a viable alternative and will have severe adverse consequences for the United States.  NASA cited a multitude of reasons supporting this conclusion, including: express Congressional mandates and Presidential directives, obligations arising from our international agreements, national security concerns, the inability of the Russian Soyuz to transport a full ISS team or perform critical science missions, the exorbitant prices charged by the Russians, and recent statements from Russian officials indicating that U.S. astronauts will no longer be permitted to travel on the Soyuz.  Plaintiff does not and cannot contest the seriousness or validity of NASA's concerns, most of which would be sufficient to justify an override *standing alone*.  Yet Plaintiff's Motion

asks the Court to cast aside NASA's concerns and continue to rely on Russia for 2018 and possibly longer.

SpaceX respectfully submits that NASA's reasoning and judgment cannot be cast aside so lightly.  Plaintiff has made no showing that NASA's override justifications are arbitrary or capricious, and absent such a showing, Plaintiff's Motion should be denied.[1]

## II.    SPACEX'S CERTIFIED BASELINE REVIEW ACTIVITIES AND THE IMPACT OF THE STAY ON SPACEX'S TIMELY PERFORMANCE

Under its CCtCap contract with NASA, SpaceX has committed to deliver a safe and reliable vehicle for the transportation of astronauts by the end of 2017.  Specifically, SpaceX has committed to ██████████████████████████████████████████ in accordance with NASA's requirements as stated in the RFP.  (SpaceX Proposal, Att. J-03, Appendix A at 39); (CTS DDTE/ Certification Core Objectives.)  In order for SpaceX to meet its ████ target dates, it is imperative that it be able to continue to work without interruption through the end of the SNC protest.  (*See* Exhibit A, Declaration of ██████████████.)

SpaceX's ██████████████████ is scheduled for ████████ (SpaceX Proposal, Att. J-03, Appendix A at 22.)  SpaceX's ██████████████ is scheduled to take place █ ██████████████████████████ (*Id.* at 35.)  SpaceX's post-certifications missions are then scheduled ████████████████████████ In order to meet its proposed schedule, SpaceX is already working under an exceptionally tight ████████ schedule.  The schedule reflects SpaceX's required activities to meet NASA's aggressive objective as articulated in the RFP while maintaining a safe environment.  A stay of performance during the

---

[1] SpaceX recognizes that the Court has already received extensive briefing and oral argument on Plaintiff's Motion.  In particular, Boeing's October 16, 2014 filing contains a fulsome description of the factual background of this case (ECF No. 14, at 7-17).  In the interest of brevity, SpaceX will not repeat those facts here, and instead focuses on the six key points below.

pendency of the protest, during these critical activities, would result in delays to all of SpaceX's milestones and certifications. (Declaration of ███████████ Indeed, according to ███████████████ the delay would likely result in SpaceX's ██████████ with NASA's aggressive certification schedule. (*Id.*)

Moreover, because the activities conducted in the first three months during the Certification Baseline Review ("CBR") lay the foundation for the entire contract, these resulting delays would result in more than a day-for-day slip. Specifically, SpaceX's CBR activities include:



(██████ Decl. ¶¶ 6-12; *see also* SpaceX Proposal, Att. J-03, Appendix A at 2-4.) SpaceX's total cost of the ██████████████ (SpaceX Proposal, Att. J-03, Appendix A at 2.) Delay of any one of these activities could cause significant residual delays; stopping all of them for a minimum of eleven weeks would almost certainly result in SpaceX's ██████████ by the 2017 deadline. (██████ Decl. at ¶¶ 10-12.)

In sum, SpaceX's internal assessment is consistent with NASA's determination that critical path activities must begin immediately in order to have sufficient time to complete the certification and flight test activities for a launch in 2017. (██████ Decl. at ¶¶ 10-12; D&F at 8.)

### III.   THE RUSSIAN SOYUZ IS NOT A VIABLE ALTERNATIVE, AND CONTINUING TO RELY ON THE SOYUZ WOULD RESULT IN NUMEROUS MATERIAL ADVERSE CONSEQUENCES FOR NASA.

NASA and Boeing have explained thoroughly why Russian transportation of U.S. astronauts to the ISS after 2017 is not tenable.  (Determination and Findings ("D&F") at 6-9, 11; Boeing Memo in Support of Opp. at 2-5, 10-11).  Because, however, the viability of the Russian option is in many ways the heart of the dispute, a few key points bear repeating:

- **U.S. law requires NASA to develop U.S. access capability as soon as possible and prohibits negotiations with foreign providers for ISS transport.**

The President and Congress expressed their desire to achieve a redundant, U.S. system and autonomy from Russia as quickly as possible.  (NASA Reauthorization Act of 2010, Pub. L. 11-267 § 501(a).)  Negotiations with Russia for utilization of the Soyuz beyond 2017 would run afoul of this mandate.  Further, Congress has expressly prohibited NASA from contracting with Russia or any other nation for transportation to ISS that U.S. companies, like SpaceX and Boeing, are capable of providing.  (51 U.S.C § 50131(a).)

- **Current diplomatic relations with Russia make negotiations for additional seats on the Soyuz practically impossible.**

Even if NASA could legally negotiate with Russia, which it cannot, current diplomatic relations with Russia make the prospect of a favorable outcome highly unlikely.  Since Russia's illegal annexation of Crimea on March 21, 2014, Russian officials have even threatened to cease supplying the U.S. with seats on Soyuz missions.  (Ex. 1 to Boeing's October 16, 2014 Memo (May 2014 statement of Russian Deputy Prime Minister Dmitry Rogozin, "After analyzing the sanctions against our space industry, I suggest the U.S. delivers [sic] its astronauts to the ISS using a trampoline.").)  As U.S. sanctions against Russia and Rogozin himself have only gotten more stringent since May, there is no reason to believe Russia would be any more amenable to negotiations now.  Additionally, even if Russia did come to the table, it would inevitably require

the United States to continue to extend the waiver of the Iran, North Korea, Syria Nonproliferation Act, a politically sensitive topic, especially in the current geopolitical climate.

- **The ISS cannot function optimally with the Soyuz as the sole means of transport.**

Whereas CCtCap vehicles will be able to ensure a full complement of seven astronauts in the ISS, each Russian Soyuz can transport only three astronauts at a time.  Not only does this mean that currently the ISS must operate with only six astronauts rather than the seven it was built to accommodate—with the result that a significant number, approximately 33 hours per week, of potential crew research time is lost because of the Soyuz vehicles' seat limitations—but also that, in the event a rescue is necessary, *at least two* capsules are required to affect a rescue of the entire ISS crew.  Research efforts are further impacted by the fact that the Soyuz is incapable of bringing experiments back to earth for assessment.

- **Missions on the Soyuz are cost prohibitive.**

Since 2006, Russia has increased its prices more than three-fold; even if Russia agreed to carry U.S. astronauts past 2017, it would likely charge more than the $76.3 million per astronaut it does now.  This high cost is further compounded by the fact that United States must also pay for the transportation of its international partners' astronauts.  (D&F at 2.)

- **Even if Russia would agree to continue to transport U.S. astronauts after 2017, reliance on a single system puts U.S. astronauts and investment at risk.**

As NASA notes, "[r]edundancy is critical for ensuring continued availability of reliable transportation" not only for planned crews, but also for emergency rescue capability.  (D&F at 6.)  Currently, even if the Soyuz were to experience a critical failure, the crews would have no choice but to use the degraded system to return to Earth.  To require the United States to continue to take this risk with its astronauts' lives when other alternatives are available is unacceptable.  Additionally, every day the Russians remain our sole option, the United States'

9

investment in the ISS is at risk.  Without redundant access, the ISS could be stranded without a crew if Russia refuses to provide access or its Soyuz fails.  As NASA states in the D&F, this is entirely unacceptable.

All of these facts contributed to NASA's decision to override the CICA stay.  In response, Plaintiff does not dispute these facts, but instead resorts to a critical misrepresentation and pure speculation.

Plaintiff's misrepresentation involves what NASA has stated to Congress.  Plaintiff would have the Court believe that NASA has *committed* to making additional purchases from Russia in 2018, and that there is no harm in the Court directing NASA to do what it has already told Congress it would do.  (Tr. 22:12-15 ("NASA recognizes the risk that the new vehicles may not be ready and that *NASA plans to continue to contract* with the Russia Space Agency, Roscosmos, to buy additional Soyuz missions.") (emphasis added)); *see also* Tr. 32:19-20 ("[T]hat's why the NASA administrator has told Congress that he expects that they *will* purchase more [Soyuzs] from Roscosmos") (emphasis added).)  The problem with this is that NASA has never stated that it will purchase Soyuz seats from Russia—rather, Administrator Bolden speculated that, if NASA did not receive sufficient funds from Congress, it "may" need to extend its Russian contract.  (*See* Ex. 11 to SNC's Brief at 8.)  As DOJ counsel stated during the hearing, NASA has no plans to make additional purchases from Russia.  (Tr. 67:24-68:15.)  Any representation by Plaintiff to the contrary can only be described as misleading at best.

Plaintiff's pure speculation arises from its allegations regarding awardees' future contract performance.  Plaintiff submits that the impact of the CICA stay on NASA's ability to receive the desired launch capability in 2017 is minimal because this program is large and complex, and SpaceX and Boeing are likely to fail to comply with the promised delivery dates anyway.  (Tr.

28:12-17, 29:11-19.)  As the Court correctly recognized during the initial conference, "none of us can see the future."  (Tr. 28:19.)  Plaintiff's speculation about whether SpaceX and Boeing will meet their contractual commitments is not a basis to excuse the *certain* impact that the 100-day stay will have on NASA's needs.[2]  Put another way, the Court should reject Plaintiff's request to turn any uncertainty regarding the awardees' ability to meet the 2017 delivery date into a certainty that no one will.

## IV.    PLAINTIFF CONCEDES THAT ITS CLAIM IS BASED ON A MERE DISAGREEMENT WITH NASA'S CONCLUSIONS IN THE D&F.

During the Court's initial conference, counsel for Plaintiff conceded that NASA conducted the required analysis and considered the relevant factors.  (Tr. at 19:19 – 20:1.)  The exchange between the Court and Plaintiff's counsel regarding NASA's consideration of relevant factors was as follows:

> THE COURT: So, in your particular argument to oppose the override, where do you think the agency went wrong, in using these standards or in how they used them?
>
> MR. METZGER: In how they used them and, more accurately, in the outcome of their use. I think the agency asked the correct questions. To us, the flaw is in the outcome; that is, how the agency assembled the facts and reasoned the application of these principles to those facts.

*Id.*

In other words, Plaintiff acknowledges that NASA applied the correct factors in reaching its override decision; Plaintiff simply disagrees with the result of NASA's analysis.  It is well settled that where the agency considers the relevant facts and applies the correct factors, a protester's mere disagreement with the agency's determination is not a valid basis to set it aside.  *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971) (holding that the "the

---

[2] It is worth noting that Plaintiff's self-serving speculation is contradicted by NASA expert evaluators, which found that SpaceX and Boeing would be able to meet the 2017 delivery date, in contrast to SNC.

court is not empowered to substitute its judgment for that of the agency"); *Automation Techs., Inc. v. United States*, 72 Fed. Cl. 723, 727 (2006) (confirming that a court's mere disagreement with the agency is not enough for it to set aside the agency's decisions).  This is true in override challenges as well.  *Ramcor Servs.Grp., Inc. v. United States*, 185 F.3d 1286, 1289–90 (Fed. Cir. 1999) (establishing that the Court of Federal Claims had jurisdiction to determine whether the agency's decision satisfied the standards of the Administrative Procedure Act); *Dyncorp International LLC v. United States*, 113 Fed. Cl. 298, 307 (2013) ("While the government may have been cautious, it was not arbitrary or capricious to insist on a stay override to ensure a buffer period during the transition schedule."); *Automation Techs, Inc.*, 72 Fed. Cl. at 727-28.

In this case, there is no dispute – NASA thoroughly examined the relevant facts under each of the individual factors set forth in *Reilly's Wholesale*.  Plaintiff does not argue, for example, that NASA neglected to consider whether it could obtain the required services by 2017 even if the 100-day stay were applied.  Plaintiff accepts that the facts upon which NASA made its decision are true; it simply disagrees with NASA that continued reliance on the Soyuz is not a viable alternative for the United States.[3]  Because Plaintiff has not shown that NASA applied the incorrect standard or ignored critical facts in reaching its override determination, Plaintiff's Motion should be denied.

---

[3] As noted above, Plaintiff attempts to characterize NASA's March 2014 statements to Congress as its admissions that continuing to rely on Russia is a viable alternative.  (Tr. 28:8-12 (representing to the Court that NASA "said several times to the House Space Committee" that NASA was "planning for the placement of additional orders").  However, as explained above, this characterization is not only misleading and not true—NASA has only informed Congress that it "*may*" have to rely on Russia in 2018 if the CCtCAP contractors are not certified in time. Ex. 11 to SNC's Brief at 8.

## V.    PLAINTIFF IGNORES THE COST OF ADDITIONAL PURCHASES FROM THE RUSSIANS.

In addressing the third *Reilly's Wholesale* factor—the cost of the override—Plaintiff asserts that NASA failed to consider the costs associated with a termination if NASA pays for services and supplies during the protest and GAO sustains Plaintiff's protest.  Plaintiff's argument is unpersuasive for four reasons.

First, the D&F shows that NASA did recognize the cost of the override, but found the adverse impact of the delay was so great that it was willing to accept the *risk* that that it would incur those costs.  D&F at 12-13.  As it does with the agency's determinations regarding the other *Reilly's Wholesale* factors, Plaintiff simply disagrees with NASA's conclusion.

Second, Plaintiff ignores the fact that NASA will only incur such costs <u>if</u> GAO sustains SNC's protest <u>and if</u> SNC displaces one of the two awardees during the subsequent re-compete. As one commentator recently reported, the likelihood that a post-award protester will prevail at GAO <u>and</u> win the ultimate contract after its protest is sustained is less than 10%.  Daniel I. Gordon, *Bid Protests: The Costs are Real, But the Benefits Outweigh Them*, 42:3 Pub. Contract L.J. (Spring 2013).  Thus, the likelihood that NASA will incur any costs as a result of the override is remote at best.

Third, Plaintiff overstates the potential cost associated with the override by $129.3 million.  NASA has stated that it wants to award two contracts to avoid creating a single point of failure.  (D&F at 2-3.)  In the event that GAO sustains SNC's protest and SNC is found to have the best value proposal during the re-compete, SNC will displace <u>one</u> of the two awardees, not both.  Whichever awardee is not displaced will continue with its performance, and the current $129 million expenditure will not be lost.  Thus, at most, the override will cost NASA $129 million.

Fourth, Plaintiff conveniently ignores the significant cost of allowing the stay to continue. A reasonable cost analysis compares the cost <u>and</u> benefits of the override.  *E-Mgmt. Consultants, Inc. v. United States*, 84 Fed. Cl. 1, 8–9 (2008).  In its D&F, NASA properly compared the potential $129 million cost of the override with the benefit of the override, which in this case is NASA's not having to pay Russia $76.3 million or more for each seat on the Soyuz.[4]  (D&F at 13.)  Recall that the United States must pay both for its own astronauts and those from our international partners.  Consequently, were the United States to need to transport four astronauts to the ISS in May 2018, NASA would have to place a $324 million order with Russia <u>today</u> for the four seats on the Soyuz.  Only by completely ignoring the cost of continued reliance on the Russians—reliance which Plaintiff does not dispute the 100-day stay will require—can one conclude that the override will cost NASA any money at all.  When accounting for the money saved by achieving independence from Russia, NASA likely will <u>save tens if not hundreds of millions of dollars in 2018 alone</u>.

### VI. THE FOUR *REILLY'S WHOLESALE* FACTORS ARE NOT A BINDING TEST, BUT RATHER ARE A HELPFUL FRAMEWORK FOR ASSESSING WHETHER NASA'S D&F WERE ARBITRARY AND CAPRICIOUS.

NASA's analysis of the need for an override under the four factors first enunciated in *Reilly's Wholesale* provides additional insight into its override decision.  Nevertheless, this Court has on multiple occasions declined to examine an override under the *Reilly's Wholesale* factors because "Congress limited the court's review of an agency's decision in a CICA override action to the Administrative Procedure Act standards ['APA']."  *Planetspace Inc. v. United States*, 86

---

[4] This of course assumes that Russia permits U.S. astronauts on the Soyuz, which the Russian Deputy Prime Minister has expressly said it would not.

Fed. Cl. 566, 567-68 (2009) (citing *Chapman Law Firm Co. v. United States*, 65 Fed. Cl. 422,

424 (2005); *Advanced Sys. Dev., Inc. v. United States*, 72 Fed. Cl. 25, 36–37 (2006)).

Consistent with *Planetspace*, recent override decisions have declined to employ the

*Reilly's* factors. *Dyncorp International*, 113 Fed. Cl. at 307. Moreover, even those decisions

that have applied the *Reilly's* factors have cautioned against over-zealous application of the

factors. *Beechcraft Def. Co., LLC v. United States*, 111 Fed. Cl. 24, 28 (2013).

SpaceX respectfully submits that, consistent with *Planetspace*, this Court should focus its

review on whether NASA's override decision complies with the requirements for rational agency

decision making under the APA. *See Planetspace Inc.*, 86 Fed. Cl. at 567-68 (refusing to engage

in anything more than a review of whether the agency acted arbitrarily because it was clear it had

not). In particular, the review of an Agency's override decision focuses on whether "the override

was based on 'a consideration of the relevant factors and whether there has been a clear error in

judgment' by the agency." *Automation Techs.*, 72 Fed. Cl. at 727 (quoting *Advanced Sys.

Dev.,Inc.*, 72 Fed. Cl. at 30).

As noted above, Plaintiff has not come remotely close to demonstrating that NASA's

D&F was arbitrary and capricious. Plaintiff acknowledges that NASA considered the relevant

factors, and, as demonstrated throughout this Opposition, Plaintiff merely disagrees with

NASA's conclusions stemming from its review of the facts. None of the information cited by

Plaintiff demonstrates that NASA failed to reasonably exercise its judgment and discretion.

### VII.   PLAINTIFF HAS ASKED THIS COURT FOR INJUNCTIVE RELIEF AND A TEMPORARY RESTRAINING ORDER; IT CANNOT CIRCUMVENT THE APPLICABLE FOUR-FACTOR TEST FOR SUCH EXTRAORDINARY RELIEF.

Plaintiff's Complaint requests declaratory judgment <u>and</u> injunctive relief, including an

emergency TRO. (Compl. ¶ 1) ("Plaintiff SNC brings this action to set aside and enjoin the

decision of Defendant . . . ."); (Compl. at 28.)  Yet in an effort to avoid the difficult burden accompanying a request for emergency injunctive relief, Plaintiff submits that it can prevail as a practical matter through only declaratory judgment.  In fairness to Plaintiff, the law is somewhat unclear on this question.  SpaceX submits, however, that the more reasoned course is to require a plaintiff asking for TRO to enjoin an agency from continuing with an override to satisfy the established four-factor test for such relief.

### A. Plaintiff Requests a Temporary Restraining Order and Injunctive Relief.

Plaintiff requests a TRO in the style of its Motion and in its prayer for relief.  Plaintiff's Prayer for Relief appeals for a temporary restraining order "prohibiting NASA from overriding the CICA stay of performance of the CCtCap contracts to Boeing and SpaceX or otherwise permitting Boeing or SpaceX to commence or continue performing the contract."  (Compl. at 28.)  Plaintiff further asks the Court to issue a preliminary and permanent injunction "prohibiting NASA from overriding the CICA stay of performance of the CCtCap contracts to Boeing or SpaceX or otherwise permitting Boeing or SpaceX to commence or continue performing the contract, until such time as the Court enters a final judgment on the merits of this action or the GAO has ruled on or otherwise resolved SNC's GAO bid protest."  (*Id.*)

At this stage of the protest, before the parties have had an opportunity to review the complete administrative record, Plaintiff's request for an emergency TRO is the only issue properly before the Court.  The remainder of the requested relief, including Plaintiff's request for declaratory judgment and preliminary and permanent injunctive relief, is more appropriately addressed after expedited briefing on the merits following production of the record.  The TRO standard of review is the proper standard of review to evaluate the Plaintiff's Motion for several reasons.

**B.      Declaratory Judgment, Standing Alone, Is Insufficient Relief to Reinstate the CICA Stay.**

Plaintiff's Prayer for Relief asks the Court to "[e]nter a declaratory judgment holding that NASA's decision to override the CICA-mandated stay on the CCtCap contracts to Boeing and SpaceX is arbitrary, capricious or not otherwise in accordance with law, setting it aside, and reinstating the CICA stay on the CCtCap contract."  (Compl. at 28.)  Although the Court is undoubtedly able to enter declaratory judgment, Plaintiff misstates the reach and effect of such a judgment.

Plaintiff's request—that the Court issue declaratory relief with the effect of enjoining NASA from overriding the CICA stay—runs contrary to the remedies allowable under the Declaratory Judgment Act.  The Act restrains the courts from providing any remedy other than to "declare the rights and other legal relations of any interested party seeking such declaration. . . ." 28 U.S.C. § 2201.  Accordingly, declaratory judgment provides a different remedy than injunctive relief and does not have the coercive power of an injunction.  *Ulstein Maritime Ltd. v. United States*, 833 F.2d 1052, 1055 (1st Cir. 1982).  "An injunction is a coercive order by a court directing a party to do or refrain from doing something, and applies to future actions. A declaratory judgment states the existing legal rights in a controversy, but does not, in itself, coerce any party or enjoin any future action."  *Id.*

Therefore, even assuming that the Court does declare NASA's D&F to be arbitrary and capricious, such a finding does not automatically set the D&F aside or reinstate the CICA stay. Only an injunctive ruling can obligate NASA to honor the stay or, alternatively, order NASA to refrain from procuring further supplies or services under the CCtCap contracts until the GAO protest is resolved.  *Id.*

Further evidence of the limited nature of the declaratory relief remedy is found in 28 U.S.C. § 2202.  That section confirms that a mere declaration of rights or duties is nothing more than a statement by offering "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."  *Id.*

If successful in the pursuit of declaratory relief, a plaintiff is permitted to file subsequent legal actions seeking injunctive relief because claim preclusion principles do not apply to actions filed pursuant to 28 U.S.C. § 2202.  *See, e.g*, *Powell v. McCormack*, 395 U.S. 486, 499 (1969) ("A court may grant declaratory relief even though it chooses not to issue an injunction. . . . A declaratory judgment can then be used as a predicate to further relief, including an injunction."). Claim preclusion explicitly does not apply to actions seeking injunctive relief after successful pursuit of declaratory relief, because a declaration of rights or duties cannot require a party to take or refrain from an action.  Only injunctive relief can force a party to act or refrain from acting and, as stated in *Powell*, declaratory judgment can serve as a predicate to further injunctive relief.  *Id.*

The difference between the effect of a declaratory judgment and injunctive relief is further evidenced by the narrow applicability of declaratory relief.  A declaration is limited to the issues exactly as they are presented to the court and does not affect the parties' rights and duties if the facts change.  As applied, declaratory judgment regarding Plaintiff's override challenge amounts to nothing more than a ruling regarding the adequacy of NASA's October 9, 2014 D&F. The finding would not reinstate the CICA stay because it can only declare the rights and duties associated with the prior Determination and Findings.  Likewise, the finding would not apply to a newly drafted Determination and Findings or prohibit NASA from continuing to request

services from SpaceX and Boeing under the CCtCap contracts if NASA decides to proceed and draft a new override justification. *See Ulstein Maritime*, 833 F.2d at 1055. Rather, only injunctive relief presents a court's coercive order directing a party to take or refrain from taking an action, and applies to future actions. *Id.*

In sum, Plaintiff cannot obtain the ultimate relief it seeks without injunctive relief. Plaintiff has asked the Court for injunctive relief and it cannot now circumvent its difficult burden to merit such relief. In Plaintiff wants the Court to set aside the override and reinstate the CICA stay, Plaintiff must demonstrate to the Court that it is entitled to injunctive relief.[5]

## VIII.   CONCLUSION

For the reasons set forth above as well as those in Boeing's October 17, 2014 Opposition, SpaceX respectfully requests that the Court deny Plaintiff's Motion for Declaratory Judgment and Injunctive Relief.

---

[5] Boeing persuasively demonstrated that Plaintiff has not demonstrated entitled to such relief under the Court's four-factor test. Boeing Opp. at 17-32. SpaceX joins Boeing in this regard and will not repeat those arguments here.

Respectfully submitted,


  /s/ Richard J. Vacura
Richard J. Vacura
MORRISON & FOERSTER LLP
1650 Tysons Blvd., Suite 400
McLean, VA 22102
(703) 760-7764
(703) 760-7777 (fax)
rvacura@mofo.com
*Counsel of Record for Space Exploration*
*Technologies Corp.*

Of Counsel:

Pablo A. Nichols
MORRISON & FOERSTER LLP
425 Market St.,
San Francisco, CA 94105-2482
(415) 268-6653
pnichols@mofo.com


Steven W. Cave
Catherine L. Chapple
MORRISON & FOERSTER LLP
1650 Tysons Blvd., Suite 400
McLean, VA 22102
(703) 760-7763
scave@mofo.com
cchapple@mofo.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing SpaceX's Opposition to Plaintiff's Motion

for Declaratory Judgment and Application for a Temporary Restraining Order was served this

20th day of October 2014 on the following:

Daniel S. Herzfeld, Esq.
U.S. Department of Justice – Civil Division
1100 L Street, N.W.,
Washington, DC 20005
*Counsel for Defendant United States of America*

Neil H. O'Donnell
Rogers Joseph O'Donnell
750 9th Street NW, Suite 710
Washington, DC 20001
*Counsel for Plaintiff Sierra Nevada Corporation*

Scott M. McCaleb
WILEY REIN LLP
1776 K Street, N.W.
Washington, DC 20006
*Counsel for Defendant-Intervenor, The Boeing Company*


　　　　　　　　　　　　　　/s/ Richard J. Vacura
　　　　　　　　　　　　　Richard Vacura
　　　　　　　　　　　　　Morrison & Foerster LLP
　　　　　　　　　　　　　1650 Tysons Boulevard
　　　　　　　　　　　　　Suite 400
　　　　　　　　　　　　　McLean, VA 22102-4220
　　　　　　　　　　　　　*Counsel of Record for Space Exploration*
　　　　　　　　　　　　　*Technologies, Corp.*